[No. 2634.   Nov. 13, 1922.]

## E. ROSENWALD & SON v. BACA et al.

### SYLLABUS BY THE COURT

(1)   The separate property of the wife is not subject to community debts under the laws of this state.        P. 278

(2)   Where the evidence upon material issues in the case is conflicting, it is error to direct a verdict.        P. 282

(3)   In an action to subject the separate property of a married woman to community debts, evidence as to whether the wife had by her conduct and representations made her separate property liable for the debt **held** conflicting, so that the direction of a verdict was improper.        P. 278

Appeal from District Court, San Miguel County; Leahy, Judge.

Action by E. Rosenwald and Son, a partnership composed of Cecilio Rosenwald, Gilbert Rosenwald and David Rosenwald, against Fred R. Baca, administrator of the estate of Marcos Arguello and Andreillita Prieto de Arguello.   Judgment on instructed verdict for plaintiff against defendant Arguello, who appeals.   Reversed, with instructions to award new trial.

F. Faircloth, of Santa Rosa, for appellant.

C. W. G. Ward and Luis E. Armijo, both of Las Vegas, for appellee.

BARNES, J.  In the year of 1916 Marcos Arguello, who was then living, opened a merchandise account at the store of the plaintiffs in Las Vegas, N. M. Arguello died early in 1919, and defendant Fred R. Baca is sued as administrator of his estate. Deceased married defendant Andreillita Prieto de Arguello in September, 1907, and they lived together as man and wife up to the day of Arguello's death.  At the time of the Arguello marriage the wife was owner in her own right and as her separate property of certain sheep, which it appears from the testimony were jointly managed by the Arguellos after the marriage.  The debt sued upon is a community debt, contracted by the husband in his lifetime, and it is sought by this action to obtain judgment against the wife, and through such judgment to charge her property with liability to execution.

The wife is sought to be charged in this action upon the ground that credit was obtained by her from the plaintiffs by reason of representations made to them by her that she was the owner of a considerable number of sheep, and that the supplies were necessary for the management and care of the sheep.  Attorney for plaintiffs in making his opening statement to the jury states that in 1916 Arguello and his wife came to the store of the plaintiff and made a statement as to their financial condition and as to the number of sheep they had; that they came in every year and made settlement, paying their account in wool and sheep, until the death of Arguello, when a book balance of $1,985.52 was shown to be due; that when the wife was asked to pay this balance she claimed the sheep as her individual property and declined to pay; that it had never been stated to plaintiffs before this time that the sheep were the property of the wife; and that the credit was extended to the Arguellos year after year because of these sheep.

Mrs. Arguello admits the purchase of merchandise from the plaintiffs by her husband substantially as charged in the complaint; denies that the goods, wares,

and merchandise were furnished or sold to her; denies that such goods, wares, and merchandise were obtained from the plaintiffs as a result of representations made by her to the plaintiffs; denies that she ever made any representations or promises to the plaintiffs; and denies any indebtedness to the plaintiffs; that account was given because of a partido sheep contract between plaintiffs and defendant's husband. On the trial of the case the court entered judgment against the defendant Mrs. Arguello for the full sum sued for, amounting to $2,129.12, but no judgment was entered against defendant Baca, administrator. From this judgment an appeal was allowed to this court.

This case was tried before a jury, and after testimony had been offered in support of the issues under the pleadings by both plaintiff and defendant Andreillita Prieto de Arguello, on motion of plaintiffs' attorney the court instructed the jury to return a verdict in favor of the plaintiffs for the full amount sued upon, which verdict was returned over the objection of the defendant and judgment entered.

[**1, 3**]  The separate property of the wife is not subject to community debts under the laws of this state (section 2762, Code 1915). Morris v. Waring, 22 N. M. 175, 159 Pac. 1002.  The sole issue in this case is whether or not Mrs. Arguello had by conduct and representations made her separate property liable for this debt.  The amount of the debt is not disputed under the proofs.  Plaintiffs and defendant both offered testimony, and the only question for consideration at this time is:  Was there anything in the testimony of the defendant which should have caused the court to submit the case to the jury.

It is neither admitted nor denied by the plaintiffs in their testimony that the sheep mentioned in the pleadings and the evidence were at all times the separate property of Mrs. Arguello, and in view of the fact that

the defendant testified that these sheep were her separate property, coming to her upon the death of her father and before her marriage, and that this testimony was met by no explanation or denial or plea of ignorance of fact on the part of the plaintiffs, and there is no word of testimony in the case showing any absolute contract or promise on the part of the defendant made to the plaintiffs as a basis for the credit, the whole testimony must necessarily be examined in order to determine the ground and extent of her liability, if any.

For the plaintiffs, David Rosenwald, a member of the firm, testified that the Arguello account was opened in plaintiffs' store in 1916; that for some years he waited on them whenever they came up; that he sold them both provisions, goods, and merchandise for Mrs. Arguello's use; that the basis of the credit was that Arguello had sheep and his account was a desirable one; that he made payment in wool and sheep; that he had personal conversations with the Arguellos, and they never at any time claimed that the sheep belonged to Mrs. Arguello, and in answer to the question, "Did they give you any other basis for extending credit to them except these sheep?" said "No." On cross-examination he testified as follows:

"Q. Did Marcos Arguello have some sheep from your firm on partido contract at that time? A. I believe he got some after he opened an account with us."

He did not know how many sheep the Arguellos got, or if the contract was ever settled before Arguello died, and in answer to the question "All you know about this, Mr. Rosenwald, is they came into your store and the goods were furnished?" replied, "I know I sold them the merchandise."

A. C. Wagner, bookkeeper for the plaintiffs, identifies the account and the books in which the same was kept, and they were offered in evidence. From these books it appears that the account was opened in October, 1916, and the last item as shown by the testimony was a credit of ewe lambs on November 17, 1919, when

Mr. Arguello was credited with $200 cash also. All transactions appeared in the name of Marcos Arguello.

Cecilio Rosenwald testifies for the plaintiffs that he is a member of the firm; had known Marcos Arguello in his lifetime and knew his widow; had charge of the credit transactions in the Arguello matter; knew Mr. Arguello for a good many years before he actually opened an account with the plaintiff; he used to come in with some of our customers located in the same vicinity from where he come from, and "as I did a credit business among sheep men in those days, I solicited his business, considering the account a good one, for the reason the man always brought up his wool, marketing it, and every fall he sold lambs and broken-mouthed ewes to balance his account; so I got him to open an account with us and sold him his supplies for the purpose of paying the expenses, both for his sheep and his family expenses, with the understanding that twice a year settlement of that account was to be made." Twice a year he made settlement of this account, delivering wool is the summer and sheep and lambs in the fall. The credit was extended to the Arguellos. When asked, "Did Mr. or Mrs. Arguello ever make any claim that these sheep were Mrs. Arguello's." he answered, "Never a word about it." Received the lambs and ewes at corrals established by the plaintiff. On cross-examination he stated that Marcos Arguello had sheep from the plaintiff on partido contract—did not remember how many—contract was settled before Arguello's death. Partido contract had nothing to do with this account sued on. Arguello kept all agreements about paying the partido in wool and sheep. Witness does not know whose sheep the wool came from.

For the defendant, Crespin, Mrs. Arguello's son by her first marriage, testified that his mother's sheep were sheep left her by witness' father at his death and the increase of such sheep. Marcos Arguello himself had no sheep, except sheep (on partido contract) from Stern & Nahm and the plaintiff. Arguello handled the

E. Rosenwald & Son v. Baca et al., 28 N. M. 276

sheep affairs. Mrs. Arguello testifies that she had from her first husband 200 head of sheep and some real estate and horses. Arguello had no sheep; bought stuff at the plaintiff's store upon her husband's credit; was not responsible for the accounts run there; did not promise Rosenwald to pay the account; bought articles there twice, the first time on the 27th of November, 1916, when he took the sheep on contract; had no conversation with the man who waited on her; had an account with Stern & Nahm's store up to the time that Cecilio Rosenwald promised he was going to give Marcos Arguello 200 head of sheep so that Arguello would come over to him; still has an open account with Stern & Nahm; does not know where her husband delivered the wool and ewes and lambs; he looked after the herding of the sheep, including her own; she would go along as cook; the wool from her sheep and the partido sheep was delivered together; paid Stern & Nahm's account in cash or lambs; Marcos delivered the lambs by her order; the partido sheep were delivered to the plaintiff about 15 days before Arguello's death.

In rebuttal one L. Trujillo, bookkeeper for Stern & Nahm, testifies for the plaintiff that the Arguello account was kept in the name of Marcos Arguello. In 1915 he owed over $400, the balance running through June, 1919, when the account was paid, and since which time goods to the amount of $40.25 were bought, which amount is still owing.

Under this state of the evidence plaintiff moved for an instructed verdict, and the motion was granted, and the case taken from the jury, and an instructed verdict rendered for the full amount of the plaintiff's demand with interest. No verdict was rendered against Baca, administrator, and the case seems to have been abandoned as to any recovery against him.

Plaintiff's own statement, that the Arguellos, as a basis for the credit to be extended by the plaintiff, made a statement as to their financial condition and

the number of sheep they had, is not sustained by any part of the proofs. It also appears from the proofs that Mrs. Arguello made no representations or promises in regard to the credit or the payment of the debt sued upon. The whole theory of the case under the pleadings and evidence appears as against Mrs. Arguello to be one of estoppel by conduct and failure to speak. Estoppel must be certain. Bigelow on Estoppel (6th Ed.) 641.

But, taking the case as made by the pleadings and evidence, it is at once apparent that conflict exists in the evidence as to the facts essential to a recovery. One of these facts which appears clearly in the evidence is upon the issue as to whether Rosenwalds extended credit because of Mrs. Arguello's sheep or because of the contemporaneous agreement between them and Arguello to furnish him sheep upon a partido contract. This creates an issue which goes to the basis of plaintiff's right to recovery, and it would certainly appear to require consideration by the jury in the case. Mrs. Arguello also testified that she bought all her personal necessities during the period of this account from Stern & Nahm, excepting on two occasions, when she went to plaintiff's store and bought on her husband's credit; that she ran the account at Stern & Nahm's. The evidence discloses that the account at the latter place was carried in her husband's name, and that Mrs. Arguello had no personal account there. The court in giving its reasons for directing an instructed verdict, suggested that the testimony of Mrs. Arguello about the Stern & Nahm account was false. This testimony might have been material in determining whether or not Mrs. Arguello was liable in this suit. Whether or not she was falsifying in her testimony was a question for the jury.

[2] Where the evidence upon a material issue in the case is conflicting, it is error to direct a verdict. Romero v. Herrera, 27 N. M. 559, 203 Pac 243.

For the reasons stated, the case is reversed, with instructions to award a new trial; and it is so ordered.

RAYNOLDS, C. J., and PARKER, J., concur.