[Civil No. 2607. Filed November 21, 1928.]

[271 Pac. 865.]

B. L. FORSYTHE, Appellant, v. F. C. PASCHAL, Appellee.

Mr. Fred W. Fickett, Jr., for Appellant.

No appearance for Appellee.

LOCKWOOD, J. — B. L. Forsythe, hereinafter called plaintiff, brought suit on three promissory notes in the sum of $1,400 against Gail M. Paschal and F. C. Paschal, her husband, hereinafter called defendants, praying that judgment be entered against both defendants, and that execution be issued first against the separate property of Gail M. Paschal, and, second, against the community property of both defendants. Judgment by default was entered against Gail M. Paschal, but her husband demurred to the complaint, which demurrer was by the court

sustained, and a judgment was entered for him thereon, whereupon plaintiff appealed as against such judgment.

The facts set forth in the complaint must be taken as true for the purpose of this appeal, and they are substantially as follows: Prior to July 23, 1924, Gail M. Paschal, then Gail M. Grant, being a single woman, was indebted to plaintiff in the sum of $1,400. On the last-named date she married F. C. Paschal, and about three months thereafter executed in favor of plaintiff the notes sued on, the consideration therefor being the pre-existing debt mentioned. Her husband was not a party to the original debt, and did not join in the notes.

There is but one question raised on the appeal, and that is whether or not community property is liable for the separate debts of either spouse contracted before marriage. Plaintiff admits that, so far as the separate debts of the parties contracted after marriage are concerned, the rule is settled for the state of Arizona in the case of *Cosper* v. *Valley Bank*, 28 Ariz. 373, 237 Pac. 175, and that community property is not liable therefor. He contends, however, that the law is different for such debts when they are contracted before marriage. His argument is based substantially on two points. The first is the rule in certain community property states to the effect that the community property is liable for antenuptial debts. *Van Maren* v. *Johnson*, 15 Cal. 308; *Dillon* v. *Lineker*, (C. C. A.) 266 Fed. 688; *Taylor* v. *Murphy*, 50 Tex. 291. And the second is the maxim of "*expressio unius est exclusio alterius*," as applied to the provisions of Civil Code of 1913, paragraph 3853, which reads as follows:

"3853. The separate property of the husband or wife shall not be liable for the debts of the other contracted before marriage."

He argues that, since the legislature expressly stated the separate property of the husband or wife should not be liable for antenuptial debts, but did not include in such exemption the community estate, the maxim of *"expressio unius"* implies that the community estate is liable for such debts. So far as the cases above cited from California and Texas are concerned, as we explained in *Cosper* v. *Valley Bank, supra,* both of these states belong to classes which have an entirely different theory of the nature of the community estate from that obtaining in Arizona. For the reasons set forth in the Cosper case, we think the California and Texas cases are not in point.

The other question is worthy of serious consideration. The doctrine based on the maxim of *"expressio unius"* is a well-established canon of statutory construction. It should never be applied, however, when the general context of the statute and the public policy of the state contradict it. *Swick* v. *Coleman,* 218 Ill. 33, 75 N. E. 807; *Kinney* v. *Heuring,* 44 Ind. App. 590, 87 N. E. 1053, 88 N. E. 865. It is used only as an aid in determining the true intent of the legislature, which is, after all, the controlling and ultimate test. *Hughes* v. *Wallace,* (Ky.) 118 S. W. 324; 36 Cyc. 1106, and cases cited. Paragraph 3854, Revised Statutes of Arizona of 1913, Civil Code, which follows immediately the paragraph relied on by plaintiff, reads as follows:

"3854. The community property of the husband and wife shall be liable for the community debts contracted by the husband during marriage, except in such cases as are specially excepted by law."

It appears, on examining these two paragraphs, that a strict application of the maxim of *"expressio unius"* would lead to contradictory results. If, under paragraph 3853, *supra,* the failure to mention the community estate as being exempt from the

antenuptial debts means that the legislature intended it should be liable therefor, on the other hand, if we apply the same rule to the succeeding paragraph, the statement that the community property should be liable for community debts contracted by the husband during marriage, coupled with the failure to make it expressly liable for any other kind of debts, would exempt it from all debts not particularly mentioned. We must therefore resort to some other source to determine the real intent of the legislature in the premises. A consideration of the general nature of the marital relation in the state of Arizona may be helpful.

It is frequently, though, strictly speaking, incorrectly, stated that marriage is a civil contract. It is more accurate to call it a status arising out of a contract, and probably the best definition of marriage under the common law, as distinct from canon law, yet given, is found in the case of *Hilton* v. *Roylance*, 25 Utah 129, 85 Am. St. Rep. 821, 58 L. R. A. 723, 69 Pac. 660. We quote therefrom as follows:

"Marriage, strictly speaking, is not a mere civil contract, but a status created by contract, 1 Bish. Mar. & Div., § 34. It is true, it is founded in consent of the parties, but the consent is the contract because of which the status is created. Marriage differs from ordinary contracts, in that it can only exist where one man and one woman are legally united for life, whereas ordinary civil contracts may exist between two or more of either or both sexes for any stipulated time. So the marriage relation differs from other contractual relations in that, when the status is once created, the state becomes an interested party, and thereafter the marriage, with the rights and duties assigned by the law of matrimony, is not subject, as to its continuance, dissolution, or effects, to the mere intention and pleasure of the contracting parties. The marriage, with its privileges, obligations, rights, and duties which are or may be assigned by the law of matrimony for the establish-

ment of families and the multiplication and education of human kind, continues during the life of the parties, and no dissolution of the status can be effected simply by the mutual consent or agreement of the parties. *It is regulated and controlled, and can be dissolved only through the sovereign power of the state, whenever justice to either or both parties or the welfare of the public demands it.*" (Italics ours.)

We have considered the nature of that status in a number of cases. In *La Tourette* v. *La Tourette,* 15 Ariz. 200, Ann. Cas. 1915B 70, 137 Pac. 426, we said:

"'The law makes no distinction between the husband and wife in respect to the right each has in the community property. It gives the husband no higher or better title than it gives the wife. It recognizes a marital community wherein both are equal. Its policy plainly expressed, is to give the wife in this marital community an equal dignity, and make her an equal factor in the matrimonial gains.''

And in the Cosper case we said:

"While under the common law the husband and wife were 'one,' and he was always the 'one,' the world has of recent years gone a long way toward recognizing that even a married woman was a human being, with most of the rights of such, and that the status of marriage partook more of the nature of a partnership than that of master and servant, or guardian and ward.''

And we readopted the above language in the case of *Hall* v. *Weatherford,* 32 Ariz. 370, 259 Pac. 282.

Under our law, therefore, the status of marriage is more analogous to that of a partnership than to any other status known. It has, however, at least one important quality not possessed by the ordinary partnership. Both, it is true, arise out of a voluntary contract, and in both the individual rights of the parties in the partnership property are subordinate

to the rights and liabilities of the partnership. In the ordinary partnership, however, the state as such is not interested. The partners may dissolve it at will, subject, of course, to the legal consequences of the dissolution. Marriage, however, as is well stated in *Hilton* v. *Roylance, supra,* "is regulated . . . and can be dissolved only through the sovereign power of the state, whenever justice to either or both parties or the welfare of the public demands it. . . . It is apparent that many of the rules of law applicable to the marriage status differ widely in material respects from those applicable to mere civil contracts."

If marriage were no more than an ordinary partnership, with all its rights and liabilities, the course to be followed in the case at bar would be clear. Plaintiff, on obtaining his judgment against defendant Gail M. Paschal, would have a right to demand that the partnership be wound up, the property divided after the payment of the partnership debts, and the interest therein of the judgment debtor subjected to execution. If we attempt to apply this rule to the marriage status, it is apparent that it would destroy to a great extent the very thing, the desire to protect, which led the state to assume its control over marriage. The state's principal interest in the marriage status is the protection of the family as a unit, and of the minor children. The whole history of our legislation in Arizona, as well as elsewhere, shows this to be true. There are few things which would do more to destroy the solidarity of family life and the proper maintenance of the children of the marriage than the possibility that the community estate and earnings primarily intended by the state for this protection could be diverted from that purpose to satisfy debts in no way connected with the family. Even in the ordinary partnership, a judgment against the individual partner cannot be collected from partner-

ship assets until after the business is wound up. Much more is this necessarily true of the marital partnership, and since it is against public policy for that to be destroyed, except when the state, for good cause shown, approves the dissolution of the family unit, until such legal dissolution occurs it would follow a creditor of the one partner may not enforce a judgment for an individual debt against the property of the community.

In the absence of a positive statutory injunction to the contrary, we hold, therefore, that, so long as the community estate remains such, it may not be subjected to the individual debts of either husband or wife contracted before marriage any more than those contracted after marriage.

The judgment of the trial court is affirmed.

ROSS, C. J., and McALISTER, J., concur.