ATLAS CORPORATION, Plaintiff-
Appellee,

v.

W. Rodney DeVILLIERS and Orco Cor-
poration, Defendants-Appellants,

Betty June DeVilliers, Plaintiff-
Intervenor,

v.

Emilio NARANJO, Third-Party
Defendant,

William C. Marchiondo, Intervenor,

Kendall O. Schlenker, as Guardian ad
Litem for minor children.

ATLAS CORPORATION, Plaintiff-
Appellee,

v.

W. Rodney DeVILLIERS and Orco Cor-
poration, Defendants,

Betty June DeVilliers, Plaintiff-
Intervenor,

v.

Emilio NARANJO, Third-Party
Defendant,

William C. Marchiondo, Intervenor,

Kendall O. Schlenker, as Guardian ad
Litem for minor children,
Appellant.

ATLAS CORPORATION, Plaintiff-
Appellant,

v.

W. Rodney DeVILLIERS and Orco Cor-
poration, Defendants,

v.

Betty June DeVILLIERS, Plaintiff-
Intervenor-Appellee,

Emilio Naranjo, Third-Party Defendant,
William C. Marchiondo, Intervenor,

Kendall O. Schlenker, as Guardian ad
Litem for minor children.

ATLAS CORPORATION, Plaintiff-
Appellant,

v.

W. Rodney DeVILLIERS and Orco Cor-
poration, Defendants,

v.

Betty June DeVILLIERS, Plaintiff-
Intervenor,

Emilio Naranjo, Third-Party Defendant,

William C. Marchiondo, Intervenor-
Appellee,

Kendall O. Schlenker, as Guardian ad
Litem for minor children.

Nos. 495–70 to 500–70.

United States Court of Appeals,
Tenth Circuit.

Aug. 4, 1971.

Rehearings Denied in Nos. 495–70,
498–70 Sept. 9, 1971.

Boston E. Witt, Santa Fe, N. M., for W. Rodney DeVilliers.

E. Douglas Latimer, Albuquerque, N. M., for Kendall O. Schlenker, as guardian ad litem for minor children, and for William C. Marchiondo.

Charles C. Spann, Albuquerque, N. M., for Atlas Corp.

Before MURRAH, PICKETT and HILL, Circuit Judges.

HILL, Circuit Judge.

These consolidated appeals and cross-appeals have for their genesis a prior action by Atlas Corporation against Rodney DeVilliers. Therein Atlas recovered a judgment of $415,000 against DeVilliers for fraud in the conversion of

funds belonging to Atlas. This court affirmed in DeVilliers v. Atlas Corporation, 360 F.2d 292 (10th Cir. 1966). Since that time, Atlas has sought to levy on DeVilliers' assets in aid of execution of the judgment. Those attempts to satisfy the judgment have occasioned various proceedings in the trial court and our task on appeal is to review those proceedings for correctness.

The facts are unusual and complex. In August of 1967, W. Rodney DeVilliers organized DeVilliers Nuclear Corporation and became its president. According to the corporation's prospectus, Rodney DeVilliers, one John Dwyer, and one James Eagleston transferred 13,775 acres of New Mexico leases to the corporation in return for an original issue of 146,000 shares of its common stock. Of that aggregate, Rodney DeVilliers received 3,000 shares personally and held 73,000 shares as custodian for the benefit of his children. The remaining shares went to Mr. Dwyer and Mr. Eagleston, except that of the shares going to Eagleston, 40,500 were held by him as custodian for the benefit of Rodney DeVilliers' children. The 3,000 shares personally owned by Rodney DeVilliers and the 113,500 shares which DeVilliers and Eagleston held as custodians for the DeVilliers children were immediately placed in escrow at an Albuquerque, New Mexico, bank.

In 1968, Atlas, in an attempt to satisfy its judgment against DeVilliers, had the United States Marshal levy on the 116,500 shares of stock held in escrow at the Albuquerque bank. Because of the escrow agreement, the bank refused to release the stock. Accordingly, Atlas instituted a proceeding in the trial court seeking to require the escrow agent bank to show why it should not deliver the stock. In that proceeding, Atlas primarily alleged that the conveyance of the stock to the children should be set aside as a fraudulent transfer whereby Rodney DeVilliers sought to defeat the rights of his judgment creditor, Atlas. A guardian ad litem was appointed for the children, and the appropriate parties were ordered to show cause why the transaction should not be set aside as a fraudulent conveyance.

After a deluge of motions from both sides, the matter came to a head on Atlas' motion for summary judgment. On February 2, 1970, the trial court entered an order directing the escrow agent bank to deliver the stock to the United States Marshal who would hold the stock pending further order of the court. After the court entered the mentioned order, Betty June DeVilliers, the former wife of Rodney DeVilliers, intervened and sought to show that one-half of the stock was her community property and was exempt from Atlas' execution. Mrs. DeVilliers alleged that in state court proceedings she had been divorced from Rodney DeVilliers, and that the state court had retained jurisdiction to determine and divide the community property of the former spouses. Accordingly, Mrs. DeVilliers claimed one-half of the DeVilliers Nuclear stock on a basis exempt from Atlas' levy.

On June 1, 1970, the trial court, acting on a motion for summary judgment, entered an order declaring Betty June DeVilliers the owner of an exempt one-half of the 116,500 shares of stock formerly held in escrow. Respecting the remainder of the stock, the trial court found no material issue of fact and granted summary judgment in favor of Atlas. Implicit in the court's original order and final order of June 1, 1970, was the determination that the stock issued in the names of the DeVilliers children was held by them under a fraudulent conveyance which could be set aside by Atlas. The DeVilliers children now appeal that adjudication depriving them of any interest in the stock. The children's appeal is cause No. 498–70 in this court. Rodney DeVilliers also appeals from the trial court's orders, and that appeal constitutes No. 495–70. Atlas appeals the holding that Betty June DeVilliers has a one-half interest in the stock exempt from execution, and that appeal constitutes cause No. 499–70.

In 1969, Atlas also attempted to levy on 890,000 shares of Aqua Pura Corporation stock owned by Rodney DeVilliers and held in escrow by the Albuquerque bank. When the bank refused to release this stock, Atlas instituted a show cause proceeding similar to the one described above. William Marchiondo intervened in that proceeding and asserted a claim of ownership to 90,000 shares of the stock by virtue of an assignment from DeVilliers. Betty June DeVilliers also intervened and made claim to one-half of the stock as her community property. On Atlas' motion for summary judgment, the trial court held that Marchiondo was entitled to the 90,000 shares which he claimed, and Betty June DeVilliers was entitled to one-half of the remaining stock exempt from Atlas' execution. Atlas was granted summary judgment as to the remaining shares. Rodney DeVilliers' appeal from that proceeding constitutes cause No. 496–70. In cause No. 499–70 and 500–70, Atlas appeals the determination that William Marchiondo and Betty June DeVilliers have interests in the Aqua Pura stock which are exempt from Atlas' levy and execution.

The remaining appeal, No. 497–70, concerns the trial court's order adjudicating Rodney DeVilliers in civil contempt of the court. The facts which form the background for the contempt proceeding are intricately interwoven with the above mentioned attempts by Atlas to levy on DeVilliers' assets in aid of execution of its judgment.

It appears that in 1968 Atlas and DeVilliers reached some sort of an agreement whereby DeVilliers would satisfy Atlas' judgment by tender of cash and DeVilliers Nuclear Corporation stock. The stock in question was not registered with the S.E.C. for public sale, so an integral part of the agreement was the understanding that DeVilliers would obtain registration of the stock by April 4, 1969. Apparently DeVilliers failed to obtain registration for the stock, and the agreement aborted. Thereafter, on April 8, 1969, the United States Marshal visited DeVilliers' office armed with a writ of execution.

According to the Marshal's testimony, when he reached DeVilliers at his office, DeVilliers claimed that he had no assets or stock to pay Atlas' judgment. Several days later, the Marshal was advised that DeVilliers was seeking to register 50,000 shares of DeVilliers Nuclear Corporation stock for sale to the public. On April 30, 1969, the Marshal returned to DeVilliers' office seeking the stock, but after a long wait was unable to see DeVilliers. On May 1, the Marshal again returned, saw DeVilliers and served the writ. At that time, Rodney DeVilliers exhibited an unsigned copy of his aborted agreement with Atlas and claimed that he had paid Atlas' judgment. Upon the Marshal's inquiry about the 50,000 shares of stock, DeVilliers replied that the stock had been placed with a New York securities firm. The Marshal questioned DeVilliers about the location and identity of other assets, but DeVilliers responded that he had no other assets. The Marshal returned the writ unsatisfied.

Subsequently it developed that most of what DeVilliers had told the Marshal was false; that is, DeVilliers had not paid the Atlas judgment, the stock had not been placed with a New York securities firm, and DeVilliers indeed had assets in the form of 890,000 shares of the Aqua Pura stock previously discussed. Furthermore, sometime after the Marshal attempted to levy on the 50,000 shares, DeVilliers sold or encumbered at least 25,000 shares and thereby effectively put that quantity of stock beyond the reach of Atlas.

Based on these facts and the Marshal's testimony, DeVilliers was found to be in civil contempt of the court for resisting the court's lawful writ. DeVilliers was ordered to pay a fine of $150,000, payable in reduction of Atlas' judgment, or be committed to jail until the fine is paid. The fine was assessed with reference to the damages occa-

sioned Atlas by DeVilliers contumacious conduct. Rodney DeVilliers appeals from the contempt citation, and this constitutes No. 497–70.

## THE CIVIL CONTEMPT APPEAL

■ On appeal, we consider first the issues raised by the contempt proceedings. Initially DeVilliers contends in this court that the evidence was insufficient to find him in contempt. There is no merit to that contention. Our above description of DeVilliers' conduct merely hits the highlights and does not go into the disgraceful details. Nonetheless, mere reference to the Marshal's testimony and the writ returned nulla bona bears out DeVilliers' clear attempt to resist the lawful writ of the court. The only conflicting evidence was Rodney DeVilliers' testimony that there was a misunderstanding between him and the Marshal. The trial judge was entitled to credit the Marshal's testimony, and that testimony provided overwhelming evidence of DeVilliers' contumacious conduct.

■ Next DeVilliers contends that the trial court was without jurisdiction to order him jailed until he pays the contempt fine. DeVilliers views the court's order as providing for imprisonment for failure to pay a debt, in contravention of Article II, Section 21 of the New Mexico Constitution and of 28 U.S.C. § 2007(a). We view the fine and the alternate commitment to jail as within the prerogative of the court under the contempt statute, 18 U.S.C. § 401(3). Because the fine was to be paid Atlas in reduction of its prior judgment does not alter the situation.[1] Atlas was entitled to compensation for the injury caused by DeVilliers' contumacious conduct.[2]

■ We now reach the issue concerning the propriety of fining DeVilliers in the amount of $150,000. There is no question that after resisting the writ, DeVilliers effectively placed at least 25,000 shares of his stock beyond the reach of Atlas. As to the value of those shares, the trial court found that the shares were worth $6.00 per share by referring to a prior transaction in October, 1968, wherein Rodney DeVilliers sold 12,500 shares of restricted DeVilliers Nuclear Corporation stock for $6.00 per share. Based on these facts, the trial court concluded that DeVilliers had injured Atlas in the sum of $150,000, and accordingly that sum was an appropriate fine for the contumacious conduct. DeVilliers claims on appeal that there was no proof that the stock was worth as much as $6.00 per share on May 1, 1969, which was the date when he avoided the Marshal's levy.

The trial court's problem in ascertaining the per share value of the stock was complicated by the fact that the stock in question was restricted and not subject to daily trading. For this reason, the court had before it no evidence of a national market quotation on the stock for May 1, 1969. The court did have before it Rodney DeVilliers' statement to the Marshal on May 1, 1969, that DeVilliers was going to offer and sell the stock at $30.00 per share. Moreover, there was DeVilliers' deposition in which he stated that the stock was worth at least $15.00 per share on May 1, 1969. Finally, there was evidence of DeVilliers' sale at $6.00 per share in late 1968. The trial judge took the cautious route and found the value on May 1, 1969, was no more than the lowest price at any material time in evidence, i. e., $6.00 per share. There is an absolute lack of evidence that the stock was worth less than this on May 1, 1969. We affirm the trial judge on this point.

■ On appeal from the contempt citation, Rodney DeVilliers also asserts that this court, in its equitable powers,

---

1.  Raymor Ballroom Co. v. Buck, 110 F.2d 207 (1st Cir. 1940).

2.  Munitions Carriers Conference, Inc. v. American Farm Lines, 303 F.Supp. 1078 (W.D.Okl.1969), aff'd 440 F.2d 944 (10th Cir. 1971); see Folk v. Wallace Business Forms, Inc., 394 F.2d 240 (4th Cir. 1968).

should relieve DeVilliers from Atlas' judgment and from the contempt citation because Atlas has acted unconscionably in enforcing its judgment. Specifically, DeVilliers claims that Atlas has abused the process of the court by a pattern of harassment and by dilatory conduct. However, DeVilliers seeks shelter in a glass house when he throws this stone, for the record fairly bristles with DeVilliers' ploys to frustrate Atlas' legitimate attempts to satisfy its judgment. Suffice it to say that we find no indication that Atlas responded in kind to the conduct to which it had been subjected.

## THE APPEALS FROM THE DISPOSITION OF THE AQUA PURA STOCK

We now reach Atlas' cross-appeals which in short contest the trial court's order declaring that William Marchiondo and Betty June DeVilliers have respective interests in the Aqua Pura stock which are exempt from Atlas' levy and execution.

As previously mentioned, Marchiondo sought to assert ownership to 90,000 shares of Aqua Pura stock by virtue of an assignment from Rodney DeVilliers. Atlas sought to set aside the assignment as a fraudulent transfer under the provisions of the Uniform Fraudulent Conveyance Act, as enacted in New Mexico.[3] Reliance was on the constructive fraud provision, § 50–14–4 N.M.S.A. (1953) which establishes by law that every conveyance made by an insolvent person is fraudulent as to creditors without regard to intent if the conveyance is made without fair consideration. Furthermore, § 50–14–9 N.M.S.A. (1953) empowers a creditor to set aside or disregard such a fraudulent conveyance. In resolution of the issue posed, the trial court apparently found that the factors of insolvency and lack of consideration did not coalesce, and accordingly the assignment to Marchiondo was valid and should not be set aside. We agree.

Evidence before the trial court showed that Marchiondo received his assignment on May 16, 1969, in consideration of prior loans and services to Rodney DeVilliers. Specifically, in March and April of 1969, Marchiondo borrowed sums of $15,000 and $8,400 which he in turn loaned to Rodney DeVilliers. Again on May 16, 1969, the date of the assignment of the stock, Marchiondo loaned $3,000 to DeVilliers. Also, beginning on January 8, 1969, Marchiondo assisted DeVilliers in patent problems connected with Aqua Pura Corporation, and furthermore, he represented DeVilliers in certain other legal matters. This evidence of consideration rendered by Marchiondo provides sufficient support for the trial court's determination that the conveyance of stock to Marchiondo was not a fraudulent transfer under § 50–14–4. Accordingly, the trial court correctly held that Marchiondo is the owner of 90,000 shares of Aqua Pura stock.

Regarding Betty June DeVilliers' interest in the Aqua Pura stock, the trial judge's order declared that Mrs. DeVilliers had a one-half community property interest in the stock by virtue of her former marriage to Rodney DeVilliers, and this interest was exempt from Atlas' levy and execution. On appeal, Atlas disputes the exemption granted in favor of Mrs. DeVilliers and contends that under New Mexico law, community property is subject not only to community debts but also subject to the separate debts of the husband.

Atlas' contention is founded upon our opinions in Eaves v. United States, 433 F.2d 1296 (10th Cir. 1970) and Denton v. Fireman's Fund Insurance Company, 357 F.2d 747 (10th Cir. 1966), but those cases are inapposite. In those cases, we were dealing with community property while the man and woman were in coverture. In the instant case, Mrs. DeVilliers was divorced from Rodney DeVilliers by the time Mrs. DeVilliers intervened seeking an adjudication of her interest in the stock. According to New

---

3. § 50–14–1 N.M.S.A. et seq. (1953).

Mexico law, "Upon the divorce of the parties all community property not divided between them did not remain community property but became property which they held as tenants in common."[4]

■ The ultimate effect of the transmutation of DeVilliers' property from a community status to a tenancy in common after the divorce is that Mrs. DeVilliers' one-half interest is her separate property.[5] Moreover, the rule in New Mexico is that separate property of the wife is not liable for the debts of the husband.[6] Therefore, we must agree with the trial judge that Betty June DeVilliers had a right to one-half the stock exempt from Atlas' levy and execution.

## THE APPEALS FROM THE DISPOSITION OF THE DeVILLIERS NUCLEAR CORPORATION STOCK

■ We come now to the trial court's disposition of the 116,500 shares of DeVilliers Nuclear Corporation stock. To reiterate, 3,000 of those shares were held personally by Rodney DeVilliers and 113,500 shares were held by DeVilliers and Eagleston as custodians of the stock issued in the names of the DeVilliers children. Originally the trial judge entered an order on Atlas' motion for summary judgment and directed the escrow agent bank to deliver the shares to the Marshal, who was ordered to hold the stock pending further court order. Subsequently the court entered a new order granting Betty June DeVilliers a one-half interest in the stock and ordering the remainder sold to satisfy Atlas' judgment. Implicit in the trial court's disposition of the stock was the determination that the issuance of 113,500 shares to the DeVilliers children was a fraudulent conveyance under the constructive fraud provision, § 50–14–4 N.

M.S.A. (1953). On appeal the DeVilliers children contend that there were genuine questions of material facts present, and therefore the fraud issue was not ripe for summary judgment.

Contrary to the contentions of the DeVilliers children, we do not believe that there were factual questions present pertaining to whether Rodney DeVilliers was solvent at the time of the conveyance or whether the DeVilliers children gave up fair consideration for the conveyance. Regarding DeVilliers' solvency, we think that the trial court could take notice of its own record in this case which extended over many years and which contained numerous writs of garnishment and execution issued against DeVilliers and returned nulla bona. The Marshal's inability to find any assets which would satisfy the writs clearly established Rodney DeVilliers' insolvency. In the face of this, DeVilliers' solvency was not put in question by his bald statement in an affidavit that he was solvent.[7]

Likewise, there was no fact question whether the DeVilliers children gave up fair consideration for the conveyance of the stock. The DeVilliers Nuclear Corporation prospectus and offering circular, which were offered with the motion for summary judgment, explained the whole transaction. Rodney DeVilliers and his fellow organizers assigned 13,775 acres of New Mexico mining leases to the corporation in return for which the corporation issued 3,000 shares of original issue stock to Rodney DeVilliers and 113,500 shares to the children. The children gave up nothing for the stock. DeVilliers filed an affidavit in opposition to summary judgment which vaguely stated that the corporation issued the stock to the children in return for which the corporation was allowed to use the

4. Jones v. Tate, 68 N.M. 258, 360 P.2d 920, 923 (1961).

5. Sections 57–3–2, 57–4–1 N.M.S.A. (1953); see August v. Tillian, 51 N.M. 74, 178 P.2d 590 (1947).

6. Section 57–3–9 N.M.S.A. (1953); E. Rosenwald & Son v. Baca, 28 N.M. 276, 210 P. 1068 (1922); .cf. Cabot v. First National Bank of Santa Fe, 81 N.M. 795, 474 P.2d 478 (1970).

7. Rule 56(e) F.R.Civ.P., 28 U.S.C.; see 6 Moore's Federal Practice, ¶ 56.22 [1].

DeVilliers name. If this is supposed to mean that the children gave consideration in terms of the use of their name, the argument is specious. By the time the children received the stock, their father had long since founded, organized and promoted the corporation under the appellation of DeVilliers Nuclear. In any event, whatever the children gave up in terms of their name can hardly be denominated *fair* consideration for 113,500 shares of stock.

On appeal, the DeVilliers children also seemed to argue that there was a genuine fact question as to who was the grantor in the transaction between DeVilliers, the corporation and the children. We think that it is clear that DeVilliers assigned his mining leases to the corporation in return for which the corporation issued original stock in the names of the children. There was no genuine fact issue concerning who acted as grantor in this transaction. But more important, the insolvency of Rodney DeVilliers and the failure of consideration from the children placed the transaction neatly within the language of § 50–14–4, N.M.S.A. (1953). As previously discussed, that statute prevents an insolvent person from defeating his creditors by divesting himself of assets for no fair consideration. This is precisely what Rodney DeVilliers has done, although he used his corporation as a conduit to effect the transfer. Such a transaction whereby assets are placed in the names of close relations via a third party and to the detriment of creditors, long has been held to be a fraudulent conveyance.[8] In summary, there were no genuine fact issues regarding the alleged fraudulent conveyance, and Atlas was entitled to set aside the issuance of the stock to the children.

▪ Concerning the trial court's disposition of the DeVilliers Nuclear stock, the court declared that Betty June DeVilliers had a one-half interest in the stock, exempt from Atlas' execution, and the court further granted Atlas' summary judgment as to the remaining shares. What we have previously said concerning Mrs. DeVilliers' right to an exempt one-half interest in the Aqua Pura stock is equally applicable to her rights in the DeVilliers Nuclear stock. Accordingly, Atlas' appeal in this regard is meritless.

Affirmed.

---

8. *E. g.*, In Re Elliott, 83 F.Supp. 771 (E.D.Pa.1948), aff'd 173 F.2d 895 (3rd Cir. 1949) ; Menick v. Goldy, 131 Cal. App.2d 542, 280 P.2d 844 (1955) ; Englander v. Jacoby, 132 N.J.Eq. 336, 28 A.2d 292 (1942) ; Sweney v. Carroll, 118 N.J.Eq. 208, 178 A. 539 (1935) ; Gillette v. Davis, 296 S.W. 658 (Tex.Civ. App.1927) ; *see generally* 37 Am.Jur.2d Fraudulent Conveyances § 80 ; 37 C.J.S. Fraudulent Conveyances § 38.