489 P.2d 641

Walt WIGGINS, Plaintiff-Appellee,

v.

Wilfred E. RUSH, Defendant-Appellant.

No. 9235.

Supreme Court of New Mexico.

Oct. 4, 1971.

Garland, Martin & Martin, William L. Lutz, Las Cruces, for appellant.

Sanders, Bruin & Baldock, Roswell, for appellee.

OPINION

MONTOYA, Justice.

This is a suit wherein the plaintiff-appellee Walt Wiggins, hereinafter called

"Mr. Wiggins," in an action for a declaratory judgment, filed a complaint against his wife Roynel F. Wiggins, hereinafter called "Mrs. Wiggins," Wilfred E. Rush, hereinafter called "Mr. Rush," and others, the latter being the grantors of three deeds to certain property wherein Mr. and Mrs. Wiggins were the grantees. Mr. Wiggins alleged the property was his sole and separate property. Appellant Mr. Rush was the only answering defendant in the case and he contends that the property in question was held either in joint tenancy or as community property, and that the transcript of the judgment filed by him, which had been obtained in a case for an antenuptial debt of Mrs. Wiggins, was a valid lien against the property described in the complaint.

In summary, the following are the pertinent findings made by the trial court. Prior to her marriage to Mr. Wiggins in April 1963, Mrs. Wiggins had signed and delivered to Mr. Rush her promissory note for $35,000 dated September 1, 1962. At the time of her marriage, Mrs. Wiggins owned separate property in Texas and Arizona.

After their marriage, Mr. and Mrs. Wiggins acquired a farm in Kansas, both being named as grantees in the deed. On January 5, 1965, Mrs. Wiggins quitclaimed her interest in the Kansas property to Mr. Wiggins, and also conveyed her separate property in Texas to her brothers. In 1966, the Kansas property was traded by Mr. Wiggins for certain property in Arkansas, and the Arkansas property was deeded to both Mr. and Mrs. Wiggins. That same year, the Arkansas property was traded for some Texas property and title thereto was taken in both their names. In 1966, the Texas property was traded to one of the defendants Geneva Spurrier for certain Chaves County property, which is involved in this action. That deed conveyed the property to Mr. and Mrs. Wiggins as joint tenants. In 1967, Mr. and Mrs. Wiggins acquired two other tracts of land in Chaves County, New Mexico, from two different grantors, M. C. Scott and G. E. Stephens. The deed from Scott conveyed title to Mr. and Mrs. Wiggins, with no recital as to their marital status. The deed from Stephens conveyed that land to Mr. and Mrs. Wiggins as joint tenants. During their marriage, Mr. and Mrs. Wiggins acquired title to two other tracts of land in Lincoln County, New Mexico, and title was conveyed to them as joint tenants. When the properties in Kansas and Texas were purchased, both Mr. and Mrs. Wiggins executed notes and mortgages to secure the purchase price. In acquiring the Arkansas property, both Mr. and Mrs. Wiggins assumed the encumbrances on the property.

During their marriage, Mr. and Mrs. Wiggins had joint bank accounts, or other accounts on which Mrs. Wiggins was authorized to sign checks. No effort was made by them to separate their properties or moneys during their marriage. They commingled their property and income and no effort was made to segregate income acquired from separate property. Substantial mortgage payments from joint accounts were made by Mr. Wiggins from his earnings upon the property acquired during the marriage. The court also found that they never intended to take title to their properties in joint tenancy, and that Mr. Wiggins never intended to give his wife an undivided one-half interest in the properties. The court further found that the properties involved in this action were acquired through the joint efforts of both Mr. and Mrs. Wiggins and were community property.

Mr. Rush obtained a judgment against Mrs. Wiggins in the Sierra County District Court, based upon the $35,000 promissory note, and filed a transcript of said judgment in Chaves County. In another case filed in Chaves County, a decree was obtained foreclosing the Sierra County judgment lien against the undivided interest of property conveyed to Mr. and Mrs. Wiggins by Stephens et ux., but no adjudication was made as to the character and

extent of such interest because Mr. Wiggins was not a party to such action.

The trial court concluded that Mr. and Mrs. Wiggins did not intend to take the properties as joint tenants; that the evidence was clear and convincing the properties in question were acquired through their joint efforts; and that the properties in question were community property.

The trial court also concluded that the community property of Mr. and Mrs. Wiggins was not liable for the antenuptial debts of Mrs. Wiggins. Therefore, the judgments in cause No. 35085 of the District Court of Chaves County, and cause No. 7076 in Sierra County and recorded also in Chaves County, did not constitute effective liens to the properties described in Mr. Wiggins' complaint.

Appellant Mr. Rush relies upon two points in seeking reversal of the trial court's decision. One contention is that there was no evidence to overcome the statutory presumption of joint tenancy, and the trial court's finding, that the property of Mr. and Mrs. Wiggins was community property, was not supported by substantial evidence. The other contention advanced by appellant is that, even if the property is community property, it would be liable for the antenuptial debts of Mrs. Wiggins.

Appellant's first contention relies heavily upon § 70–1–14.1, N.M.S.A., 1953 Comp., which reads as follows:

"An instrument conveying or transferring title to real or personal property to two [2] or more persons as joint tenants, to two [2] or more persons and to the survivors of them and the heirs and assigns of the survivor, or to two [2] or more persons with right of survivorship, shall be prima-facie evidence that such property is held in a joint tenancy and shall be conclusive as to purchasers or encumbrancers for value. In any litigation involving the issue of such tenancy a preponderance of the evidence shall· be sufficient to establish the same."

The major question is whether there is a preponderance of the evidence to support appellant's contention that the property was a joint tenancy. Both the intention of the parties and the source of funds used to purchase the property have bearing on this issue.

The trial court found that Mr. and Mrs. Wiggins did not understand the meaning or effect of a joint tenancy, nor did they wish to hold the property as joint tenants. Hence, the court's conclusion, that Mr. and Mrs. Wiggins did not intend to take the property as joint tenants, has substantial support in the record.

■ In examining the source of funds used to purchase the property, the trial court found that, during their marriage, Mr. and Mrs. Wiggins made no effort to segregate their separate funds from their community funds, nor was any accounting made as to sources of income. It appears that all moneys were deposited in a joint account. The rule is that if separate property has been so commingled or mixed with property acquired after marriage, so that the separate property cannot be clearly traced or identified, then there is a presumption that the property acquired after marriage is community property, unless this presumption can be overcome by proof. Stroope v. Potter, 48 N.M. 404, 151 P.2d 748 (1944); Burlingham v. Burlingham, 72 N.M. 433, 384 P.2d 699 (1963); Wood, the Community Property Laws of New Mexico, Ch. V, § 24 at 38 (1954).

Nothing appears in the record to indicate that the separate funds of either Mr. or Mrs. Wiggins were traceable in their joint account. The effect of this commingling was that any separate funds deposited in the joint account were transmuted into community funds. See, Burlingham v. Burlingham, supra. The trial court also found these community funds were used to purchase the property, and that mortgage payments on the property were made with community funds.

■ Because it was not the intention of Mr. and Mrs. Wiggins to hold the property as joint tenants, and because community funds were used to purchase the property,

the trial court concluded that a joint tenancy was not created. This conclusion, being supported by evidence of a clear and convincing nature, should be upheld.

Appellant further argues that § 57–4–1, N.M.S.A., 1953 Comp., is applicable. That section states:

"All other real and personal property acquired after marriage by either husband or wife, or both, is community property; * * * except, that when any such real or personal property is acquired by husband and wife by an instrument in writing in which they are described as husband and wife, unless a different intention is expressed in the instrument, the presumption is that such property is community property of said husband and wife. * * *"

However, in view of the trial court's findings, that community funds were used to purchase the property, the fact that the deeds named Mr. and Mrs. Wiggins as joint tenants is not controlling. In re Trimble's Estate, 57 N.M. 51, 253 P.2d 805 (1953).

Having held that the property in question was community property, the next question is whether the interest of Mrs. Wiggins in the community property is liable for her antenuptial debts.

There are several statutory provisions governing the community estate. See, §§ 57–3–8, 57–3–9, 57–4–2, 57–4–3, 29–1–8, N.M.S.A., 1953 Comp., and § 29–1–9, N.M.S.A., 1953 Comp. (1969 Pocket Supp.), but none of these sections deal with the precise question of whether the community is liable for antenuptial debts of either spouse. This court has held the wife's separate property was not liable for community debts, E. Rosenwald & Son v. Baca et al., 28 N.M. 276, 210 P. 1068 (1922), but we have not decided whether the community would be liable for a spouse's antenuptial debt.

There is no unanimity among the courts as to how this question should be resolved. The California court has held that the separate property of the wife and the commu-

nity estate were equally liable for the debts of the wife contracted before marriage. Van Maren v. Johnson, 15 Cal. 308 (1860). Texas also reached the same result, however the holding in the Texas case may be modified by reason of subsequently enacted statutes. Dunlap v. Squires, 186 S.W. 843 (Tex.Civ.App.1916).

In Washington, the court held that community property would not be liable for the antenuptial debt of one of the spouses. Escrow Service Co. v. Cressler, 59 Wash. 2d 38, 365 P.2d 760 (1961). That decision apparently was based upon a statute lending itself to that interpretation. See, R.C. W. 26.16.200. The Arizona court also has determined that the community estate would not be liable for the antenuptial debts of one spouse. Forsythe v. Paschal, 34 Ariz. 380, 271 P. 865 (1928), see discussion of case infra.

This being a question of first impression in this jurisdiction, counsel for appellant urges this court to apply common law principles to the instant case, because of the 1876 statute declaring the common law shall be the rule of practice and decision in New Mexico. Counsel argues that the application of common law principles would result in a finding that the husband is liable for the debts of his wife contracted *dum sola*. See, Van Maren v. Johnson, supra.

Appellant further contends that New Mexico's community property statutes were, in large part, adopted from the California statutes then in effect. He cites the general rule to-wit: The adoption of the statutes from another state includes prior construction of those statutes by the courts of that state. Appellant, therefore, urges us to follow the California decision holding that the community property of the wife is liable for her antenuptial debts. That argument was disposed of by this court in McDonald v. Senn, 53 N.M. 198 at 205, 204 P.2d 990 at 993–994, 10 A.L.R.2d 966 at 971 (1949), as follows:

"It is true, the New Mexico community property laws were largely an adop-

tion of the California statutes. But this court has never followed the decisions of the California courts with respect to the interests of the spouses in community property; nor have the courts of any other state done so. This conflict of decisions goes back to an early date."

This court has held that common law principles, which are applicable to our conditions and circumstances, are the rule of practice and decision in New Mexico. Browning v. Estate of Browning, 3 N.M. (Gild), 659, 9 P. 677 (1886). We have also held that, when dealing with community property concepts, it is necessary to look to the Spanish-Mexican law for definitions and interpretations concerning the community estate. Beals v. Ares, 25 N.M. 459, 185 P. 780 (1919). In addition, this court stated in McDonald v. Senn, 53 N.M. at 213, 204 P.2d at 999, 10 A.L.R.2d at 977:

> "The state's public policy on the subject of community property is expressed in the statutes, interpreted in the light of the Spanish-Mexican law. * * *"

█ It appears the community property concept is unique and not part of the common law of New Mexico. We must, therefore, reject appellant's contention that common law principles apply and look instead to the Spanish-Mexican law.

█ The Supreme Court of Louisiana, in Fazzio v. Krieger, 226 La. 511 at 516–517, 76 So.2d 713 at 715 (1954), pointed out:

> "* * * Research into the Spanish law of community property reveals that since the year 1255 A.D. the Spanish law has contained the provision that an antenuptial debt of one spouse is the liability of his separate property alone. * * *"

We are in complete accord with the Louisiana court in the interpretation of the Spanish law on this subject.

Mr. William Q. deFuniak, in his authoritative treatise, Principles of Community Property, Vol. I, § 158 at 442, is critical of court decisions holding the community estate liable for the antenuptial debts of one of the spouses, and states:

> "The conclusion regrettably reached from the foregoing is that in none of the states discussed is there any clear understanding of the true principles applicable so far as community property is . concerned. But another view exists in some of the community property states which seems to represent a more correct understanding and proper application of the law. This view denies any liability .of the community property for antenuptial debts and obligations of the spouses. In justification of this view it is pointed out that the proper maintenance and protection of the family would be endangered if the community estate and earnings could be diverted from its purpose of insuring such maintenance and protection, in order to satisfy debts in no way connected with the family. * * *"

We believe the view expressed by Mr. deFuniak is the better rule.

A close examination of Forsythe v. Paschal, supra, is warranted because the facts of that case closely parallel the instant case and call for an application of the above cited rule. In Forsythe, the Arizona court faced the question of whether the community property was liable for the separate debts of either spouse contracted before marriage. As in New Mexico, Arizona had statutes governing community property, but those statutes were silent on the question of liability of the community for the antenuptial debts of either spouse. See, R.S.A.1913, Civil Code, ¶¶ 3853 and 3854. Like New Mexico, Arizona also had a statute adopting the common law as the rule of decision in all courts of that state. Laws of Arizona 1907, Ch. 10, § 8; see also, Hageman v. Vanderdoes, 15 Ariz. 312, 138 P. 1053 (1914).

Two contentions raised in Forsythe v. Paschal, supra, were argued in the instant case. First, that it was the rule in certain other community property states, notably California and Texas, that the community property was liable for the antenuptial

debts of either spouse. Secondly, that the maxim of *"expressio unius est exclusio alterius"* should be applied to the statutes governing community property. It was argued that, since the legislature expressly stated the separate property of either spouse should not be liable for the antenuptial debts of the other and did not expressly exempt the community estate from liability for such debts, the maxim of *"expressio unius"* implied that the community would be liable for antenuptial debts.

The Arizona court disposed of the first contention by citing its former decisions holding that the nature of the community property estate was based upon a different theory than Texas and California. Consequently, decisions of those states were not controlling in Arizona. In dealing with the contention that the maxim of *"expressio unius"* applied, the court reasoned that, though the maxim was true as a general principle, when the public policy of the state was vitally affected the maxim would not be applied to contradict it.

. The State of New Mexico has a vital interest in the marital status. This interest is clearly expressed in our statutory framework concerning the marital status, including its creation, dissolution, and the methods by which the parties to the marriage can hold property. It is this vital state interest in the marital status that distinguishes the marriage relationship from other contractual relationships. For a creditor of one of the spouses to be allowed to collect his debt from the community estate would materially affect the property of the family unit, and could ultimately undermine the marital relationship. As the Arizona court stated in Forsythe v. Paschal, 34 Ariz. at 386, 271 P. at 867:

> " * * * There are few things which would do more to destroy the solidarity of family life and the proper maintenance of the children of the marriage than the possibility that the community estate and earnings primarily intended by the state for this protection could be diverted from that purpose to satisfy debts in no way connected with the family. * * *"

This court is in full accord with the Arizona court on this point. New Mexico's interest in the protection of the family relationship, as expressed in our statutes, indicates that the state deems itself an interested party when the community estate and the marriage itself are affected. If the legislature had intended that the community property of the marriage should be subjected to the antenuptial debts of either spouse, it would so state. This it has not done.

For this court to hold that the community estate of Mr. and Mrs. Wiggins is liable for the antenuptial debt of Mrs. Wiggins would be against the public policy of New Mexico.

The decision of the trial court is affirmed.

It is so ordered.

COMPTON, C. J., and McMANUS, J., concur.